## PEOPLE *v.* JONDREAU

1. TREATIES — TITLE TO LAND — FEDERAL GOVERNMENT — POWER TO CONVEY PROPERTY.

   The State of Michigan has owned adjacent land in the beds of the Great Lakes since its admission to the Union in 1837; thus the Federal government could not by an 1854 treaty allow this land to remain in Indian ownership, since it already belonged to the State.

2. APPEAL AND ERROR—FOREIGN PRECEDENTS—BINDING AUTHORITY.

   Foreign precedents although not binding may be considered on appeal.

3. TREATIES—CONSERVATION STATUTES—EXEMPTION FROM COVERAGE —INDIANS.

   Federal treaty granting Indians living on ceded territory the right to hunt and fish thereon provides no immunity, as against the state, from imposition of reasonable state game and conservation laws (CLS 1961, § 308.201).

4. SAME — INDIAN TREATIES — STATE CONSERVATION STATUTES — SUPREMACY.

   Reasonable state game and conservation statutes are part of the state's sovereign power to regulate in order to conserve its natural resources and do not violate dated Federal treaties even though they are treated as the supreme law of the land (US Const, art 6, § 2; CLS 1961, § 308.201).

Appeal from Baraga, Condon (Stephen D.), J. Submitted Division 3 October 2, 1968, at Marquette.

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indians §§ 23, 28, 43.
[2] 20 Am Jur 2d, Courts § 200.
[3, 4] 41 Am Jur 2d, Indians §§ 10, 11, 63–66.

(Docket No. 3,585.)    Decided December 23, 1968.
Leave to appeal granted March 18, 1969.    See 381
Mich 808.

William Jondreau was convicted of illegal posses-
sion of lake trout.    Defendant appeals.    Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Nicholas V. Olds*
and *Curtis G. Beck,* Assistant Attorneys General,
for the people.

*Wisti, Jaaskelainen & Schrock,* for defendant.

McGREGOR, J.    An officer of the Michigan conser-
vation department arrested William Jondreau on
June 1, 1965, for illegal possession of lake trout.
The fish were taken from Keweenaw bay in contra-
vention of a state conservation commission order,
promulgated under authority of CLS 1961, § 308.201
(Stat Ann 1967 Rev § 13.1568[1]).    The circuit
court of Baraga county, sitting without a jury, re-
jected defendant's argument that he was exempt
from state game laws because of his Indian status
and treaty rights, and found him guilty on authority
of *People* v. *Chosa* (1930), 252 Mich 154.

The issue presented is whether an Indian is sub-
ject to state game laws on non-reservation land, de-
spite dissimilar language in a treaty between the
Chippewa tribe and the Federal government.

A preliminary question to our final resolution is
whether or not the offense occurred on tribal land.
Defendant claims on appeal that he fished within the
"exterior boundaries" of his Indian reservation.
Submerged lands of the Great Lakes adjacent to
Michigan have been state property since statehood
in 1837.    23 Mich Law & Practice, Waters and Wa-
tercourses, § 60, p 326.    Consequently, since the land

was state property, the United States, in an 1854 treaty, could not allow unceded submerged land to remain in Indian ownership. Since title had been previously conveyed away by the Chippewas, the tribe did not have title to the land adjacent to where defendant was fishing at the time of the arrest. Therefore, the issue involves fishing on non-tribal land outside the boundaries of a reservation.

Defendant claims that he is exempt from regulations under state conservation laws because of a provision in Art XI of an 1854 treaty between the United States and the Chippewa tribe of Lake Superior. The relevant portion reads:

"And such of them as reside in the territory hereby ceded, shall have the right to hunt and fish therein, until otherwise ordered by the President."

As a tribal member, defendant claims he is not subject to Michigan fishing laws on ceded territories. As support, he cites *State* v. *Arthur* (1953), 74 Idaho 251 (261 P2d 135), which held total exemption for Indians from state regulation on off-reservation hunting grounds. Although advisory, an Idaho decision is not binding authority in this jurisdiction. Defendant also submits the unsuccessful argument employed in an *amicus curiae* brief submitted in *Department of Game* v. *Puyallup Tribe* (1967), 70 Wash 2d 245 (422 P2d 754). The argument there was that state conservation regulations may be enforced against Indians claiming hunting and fishing rights under a treaty only if such regulation is "indispensable" to the effectuation of the state's conservation programs. The court, however, held that state conservation regulations are enforceable against Indians when the regulations were "necessary and reasonable" to the state's program. On certiorari, the United States Supreme Court affirmed, holding that

the treaty provisions did not preclude the state from regulating fishing in the interests of conservation, provided that such regulation was a reasonable and necessary exercise of the state's police power and did not discriminate against the Indians. *Puyallup Tribe* v. *Department of Game* (1968), 391 US 392 (88 S Ct 1725, 20 L Ed 2d 689).

*People* v. *Chosa, supra,* stands as controlling authority in the present case. The fact situations are indistinguishable, a Chippewa Indian claiming exemption from state game regulations as applied to his fishing in Keweenaw bay under the 1854 treaty. The court in *Chosa* held that rights claimed under the treaty do not exempt Indians from the application of state conservation laws. That decision represents the applicable law in Michigan and impels affirmance. Nevertheless, defendant attacks *Chosa, supra,* as unconstitutional. He claims the holding, that the 1854 treaty provides no immunity from the operation of state conservation laws, violates US Const, art VI, § 2, which deems Federal treaties the supreme law of the land. The United States Supreme Court has reconciled the conflict between treaty rights and the state's sovereign power to regulate in order to conserve its natural resources. See *Kennedy* v. *Becker* (1916) 241 US 556 (36 S Ct 705, 60 L Ed 1166). Reasonable state conservation regulations do not violate dated Federal treaties, and defendant cannnot evade a state fishing law by claiming immunity under the 1854 treaty. The following excerpt from *Chosa,* partially quoting *Kennedy,* illustrates our reasoning:

" '* * * we are of the opinion that the clause is fully satisfied by considering it a reservation of a privilege of fishing and hunting upon the granted lands in common with the grantees, and others to whom the privilege might be extended, but subject

nevertheless to that necessary power of appropriate regulation, as to all those privileged, which inhered in the sovereignty of the State over the lands where the privilege was exercised.' [*Kennedy* v. *Becker,* pp 563, 564.]

"These cases are conclusive on the effect of the treaties at bar. The treaties evidently established a servitude of the right to hunt and fish on the ceded land in favor of the Indians and against the exclusive dominion of private ownership, but they provided no immunity from operation of game laws, as against the State." (p 160.)

Defendant's conviction is affirmed.

T. G. KAVANAGH, P. J., and PHILIP C. ELLIOTT, J., concurred.